# **EXHIBIT A**

Gerrit M. Pronske
State Bar No. 16351640
Vickie L. Driver
State Bar No. 24026886
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: vdriver@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR SCHOOL FOR ALLIED
HEALTH PROFESSIONALS, LTD.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **SCHOOL FOR ALLIED HEALTH** | § | |
| **PROFESSIONALS, LTD.** | § | **CASE NO. 09-40950-RFN-11** |
| | § | **Chapter 11** |
| Debtor. | § | |

**PLAN PROPONENTS' FIRST AMENDED PLAN OF REORGANIZATION
DATED APRIL 20, 2010**

**ARTICLE I
SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposed by School for Allied Health (the "Debtor") and SFAHP Management, LLC (the "General Partner" and, together with the Debtor, the "Plan Proponents") proposes to pay the Debtor's creditors from sources such as an infusion of capital, cash flow from operations, and future income. This Plan provides for no classes of secured claims; two classes of unsecured claims; and one class of equity interests. Priority unsecured creditors, consisting of wage claims, will be paid in full over a twelve month period. General unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 50 cents ($0.50) on the dollar. This Plan also provides for the payment of administrative claims in full on the effective date of this Plan, with the exception of the Administrative Claims as provided for below, and priority tax claims to be paid quarterly over a five year period.

All creditors and equity interest holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02    Class 2.  All unsecured claims allowed under § 502 of the Code, including non-insider trade creditors and unsecured claims of the Debtor's insiders.

2.03    Class 3.  Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02    Administrative Expense Claims.   Except as provided below, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

(a)    WC-Arlington Administrative Expense Claim.   WC-Arlington, LLC ("WC-Arlington") is allowed an administrative expense claim in the amount of $320,000 as payment for administrative rent, to be paid pursuant to the terms of a cash flow promissory note (the "Cash Flow Note") from the excess proceeds of Debtor's post-Effective Date revenue less operating expenses and an allowance for a $50,000 cash reserve (the "Excess Cash Flow").  The Cash Flow Note is subject to such terms and forms as approved by WC-Arlington and Debtor.  Debtor's payments on the Cash Flow Note to WC-Arlington shall begin on the first business day following ten (10) days from Debtor's general partner's receipt of Title IV Funding.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full, quarterly, over a period of 5 years, with their allowed claim accruing interest at 4.5% interest.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION                                                  Page 2 of 11
DATED APRIL 20, 2010**

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Treatment of Claims and Interests under the Plan.  Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | impaired | Class 1 Priority Unsecured Claims are impaired by this Plan, and, except as provided herein, each holder of a Class 1 Priority Unsecured Claim will be paid in full over a twelve month period, on a monthly basis, with the first payment due on September 1, 2010. |
| Class 2 - General Unsecured Creditors | impaired | Class 2 is impaired by this Plan, and each holder of a Class 2 General Unsecured Claim shall receive quarterly payments in a total amount equal to 50% of their Allowed Claim from the Excess Cash Flow to begin after payment in full of the WC-Arlington Administrative Claim. |
| Class 3 - Equity Interest Holders of the Debtor | impaired | Class 3 is impaired by this Plan.  The percentage ownership of each Equity Interest Holder will be diluted to allow a 9.9% equity interest in the Debtor in favor of WC-Arlington (the "WC-Arlington Equity Interest") and an interest equal to $124,000.00 transferred to Nora Flores in exchange for payment of her post-petition unpaid salary.  All parties agree to execute all documents necessary to effectuate the above-described equity interests and transfers, including without limitation, mutually acceptable confidentiality and nondisclosure agreements. |

4.02    WC-Arlington Class 2 General Unsecured Claim.  WC-Arlington is allowed a Class 2 General Unsecured Claim in the amount of $200,000 (the "WC-Arlington Unsecured Claim"), to be paid pursuant to the terms of the Cash Flow Note after the WC-Arlington Administrative Claim has been paid in full.

(a)    Credit against WC-Arlington Unsecured Claim.  Debtor shall receive a $50,000 credit against the WC-Arlington Unsecured Claim if: (i) Debtor proposes a candidate to

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**                                     **Page 3 of 11**
**DATED APRIL 20, 2010**

WC-Arlington to lease the Premises on or before December 31, 2010, and (ii) the candidate is acceptable to WC-Arlington and takes possession of the Premises on or before December 31, 2010.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  The Deadline to file objections to claims shall be 60 days after the effective date of the Plan.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor is not currently assuming any executory contracts or unexpired leases.

6.02    Rejected Executory Contracts and Unexpired Leases.

(a)    Rejection of Wakefield Lease by Operation of Law.  On December 16, 2009, by operation of law, the Debtor rejected that certain commercial lease dated July 20, 2006 (the "Wakefield Lease") between the Debtor and 701 E. I-20 Ltd., assumed and assigned pursuant to that certain Assignment and Assumption of Leases dated May 1, 2007 wherein WC-Arlington, LLC became the landlord under the Lease.  Pursuant to that certain order entered by the Court on February 25, 2010 and the agreement reached between Debtor and WC-Arlington:

(1)    Debtor shall turnover the premises subject to the Wakefield Lease (the "Premises") on or before May 30, 2010.

(2)    Debtor shall receive a $50,000 credit against the WC-Arlington Unsecured Claim if: (i) Debtor proposes a candidate to WC-Arlington to lease the Premises on or before December 31, 2010, and (ii) the candidate is acceptable to WC-Arlington and takes possession of the Premises on or before December 31, 2010.

(b)    Rejection of Executory Contracts.  The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Operation of the School.  The Debtor shall continue operating its business following the effective date of this Plan and shall dedicate sufficient revenues to fund all obligations contained herein.  The General Partner shall continue to apply for and hold any and all licenses and/or regulatory permits in connection with the operation of the Debtor's business, including any right to receipt of Title IV funding (the "Licenses") for the benefit of the Debtor and shall not sell, assign, or encumber the Licenses without the prior written consent of the Debtor and WC-Arlington.  The General Partner shall remain the Debtor's general partner and shall assign all rights to payment under the Licenses, including the right to receipt of Title IV funding, to Debtor during the life of the Plan and/or as long as WC-Arlington retains the WC-Arlington Equity Interest, whichever period is longer.

Alternatively, subject to final approval and documentation between counsel for the Debtor and counsel for WC-Arlington and confirmation by Debtor's counsel that such a grant will not impermissibly violate or encumber the Licenses, the General Partner may grant to WC-Arlington a first-priority security interest in the Licenses and any proceeds from the Licenses to secure WC-Arlington's right to payment under the Cash Flow Note.

7.02    Location of the School.  The Debtor has entered into a new, 10-year lease with Rupert Murdog, LLC for the premises located at 4100 Embarcadero, Arlington, Texas where the school will operate (the "Embarcadero Lease").  A true and correct copy of the Embarcadero Lease is attached hereto as **Exhibit 1**.  Only Dr. Pecana, a 13.68% Limited Partner in the Debtor and 100% owner in the General Partner, owns less than 5% of Rupert Murdog, LLC.  Otherwise, no insider of the Debtor is an equity owner of Rupert Murdog, LLC.  The terms of the Embarcadero Lease are substantially better than the Wakefield Lease, which has been rejected by the Debtor, and the Debtor's entry into the Embarcadero Lease is in the ordinary course and in Debtors' best business judgment.  Terms of the Embarcadero Lease include, but are not limited to, monthly rent in the amount of $11,000.00 covering all utility expenses, common area management expenses, taxes, and insurance, and also $105,000.00 in tenant improvement funds, so that the Debtor will have a custom build-out in the new space.  This Plan is also a motion for approval of Debtor's entry into the Embarcadero Lease.

7.03    Infusion of Capital.   The Debtor shall use funds received as new value from existing Equity Interest Holders to pay administrative claims.  Any remaining new value contributions remaining after the payment of administrative claims shall be used to operate the Debtor's business and pay claims under this Plan.  The required post-Confirmation capital contributions and equity holders in the Debtor are listed in Exhibit B to the Disclosure Statement.

7.04    Documents:  All necessary documents for the implementation of this Plan shall be executed by all necessary parties in interest on the effective date of this Plan, unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination.  Upon the effective date of the Plan, or as soon as practicable thereafter, the Court shall have resolved said issues, and all such documents shall be binding on the Debtor, the creditors, and all other parties hereto.

With respect to the WC-Arlington Equity Interest , all parties agree to execute all documents necessary to effectuate the above-described equity interests and transfers, including, without limitation, mutually acceptable confidentiality and nondisclosure agreements.

7.05    Rights Under 1129(b):  If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtor will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of § 1129(b) in that event.

## ARTICLE VIII
## CAUSES OF ACTION

8.01    Retention of Causes of Action:  All claims and causes of action owned by the Debtor, causes of action that could have been brought by a creditor on behalf of the Debtor, and all causes of action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Debtor for the benefit of the creditors, as provided herein, including, but not limited to causes of action arising in and under Chapter 5 of the Bankruptcy Code.  The Debtor shall have the exclusive right to settle or compromise all such causes of action subject to Bankruptcy Court approval.  Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

## ARTICLE IX
## GENERAL PROVISIONS

9.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

9.02    Plan Proponents.  This Plan is jointly proposed by Debtor and the General Partner.

9.03    Effective Date of Plan. The effective date of this Plan is the fifteenth business day following the date of the entry of the order of confirmation.  But, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on

which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.04    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.05    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.06    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.07    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.08    Transfer of WC-Arlington Administrative Claim and WC-Arlington Unsecured Claim.  WC-Arlington may transfer the WC-Arlington Administrative Claim and/or the WC-Arlington Unsecured Claim without the prior consent of the Debtor, subject to certain restrictions contained in a confidentiality and nondisclosure agreement.

9.09    Buyout of WC-Arlington Equity Interests.  After eighteen (18) months following the Debtor's first payment under the Cash Flow Note, the Equity Interest Holders may offer to buyout the WC-Arlington Equity Interest for an amount equal to five times the Debtor's Earnings Before Interest, Taxes, Depreciation, and Amortization (EBITDA), based on a twelve (12) month trailing average (the "Buyout Offer").  The Buyout Offer shall expire after a period of thirty (30) days (the "Buyout Offer Option Period").  During the Buyout Offer Option Period, WC-Arlington may publicly market its WC-Arlington Equity Interest, subject to a confidentiality and non-disclosure agreement, the form of which is subject to Debtor's prior approval.  The Equity Interest Holders shall have a right of first refusal regarding any offers that WC-Arlington obtains during the Buyout Offer Option Period.

*9.010    General Partner Injunction.  The General Partner is hereby enjoined and restrained pursuant to Section 105 of the Bankruptcy Code from resigning as the General Partner of the Debtor, taking any action that will modify the partnership relationship between the General Partner and the Debtor, assigning, encumbering, or alienating its interest in the Licenses or its rights to receipt of the proceeds from the Licenses, and/or taking any other action that is in any manner inconsistent with the terms of the Plan during the life of the Plan and/or as long as WC-Arlington retains the WC-Arlington Equity Interest, whichever period is longer.*

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**                                                                                              **Page 7 of 11**
**DATED APRIL 20, 2010**

# ARTICLE X
# DISCHARGE

10.01 <u>Discharge of Claims</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor or any of its assets or properties to the extent permitted by section 1141 of the Bankruptcy Code.  Upon the Effective Date, all existing Claims against the Debtor shall be deemed to be discharged, and all holders of Claims shall be precluded from asserting against Debtor's assets or properties any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

10.02 <u>Discharge of Debtor</u>.  Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties.  Upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Pursuant to section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a claim discharged and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a claim discharged.

10.03  <u>Exculpations</u>:  The Debtor's professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

10.04  <u>Injunctive Relief</u>:  Except as provided herein, on and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

# ARTICLE XI
# RETENTION OF JURISDICTION

11.01 <u>Purposes</u>:  Notwithstanding entry of the Confirmation Order, this Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

    i.     to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

    ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or this Plan;

    iii.   to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.   to hear and determine any and all actions initiated by the Debtor, whether by motion, complaint or otherwise;

    v.    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date;

    vi.   to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

    vii.   to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

    viii.  to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

    ix.   to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtor from creditor actions;

      x.      to hear any other matter not inconsistent with chapter 11 of the Bankruptcy Code;

      xi.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

      xii.      to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

      xiii.      to enforce all orders, judgments, injunctions, and rulings entered in connection with the chapter 11 case;

      xiv.      to determine all issues relating to the claims of the IRS, and other taxing authorities, state or federal;

      xv.      to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

      xvi.      to enter a Final Order and final decree closing the chapter 11 case.

      11.02  <u>Exclusive Jurisdiction</u>:  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation, or administration of this Plan, the Confirmation Order, or the Disclosure Statement, and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

      11.03  <u>Abstention</u>:  If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the chapter 11 case, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

      11.04  <u>Closing of Case</u>:  The Debtor shall file an application for final decree and to close the chapter 11 case and promptly set a hearing no later than twelve (12) months after the effective date of the Plan, or show cause to the Bankruptcy Court within such period why the Bankruptcy Court should not enter a final decree.  Any adversary proceeding that is a cause of action shall survive the entry of a final decree and closing of the chapter 11 case, and jurisdiction shall be retained over such proceeding.

Dated: April 20, 2010.

        Respectfully submitted,

By: */s/ Robert Fisher*
    Robert Fischer, Vice President of General Partner of Debtor

By: */s/ Vickie L. Driver*
    Gerrit M. Pronske
    State Bar No. 16351640
    Vickie L. Driver
    State Bar No. 24026886
    Melanie P. Goolsby
    State Bar No. 24059841
    Pronske & Patel, P.C.
    2200 Ross Avenue, Suite 5350
    Dallas, Texas 75201
    (214) 658-6500- Telephone
    (214) 658-6509 - Facsimile
    gpronske@pronskepatel.com - Email
    vdriver@pronskepatel.com - Email
    mgoolsby@gmail.com – Email

**COUNSEL FOR DEBTOR**